RESPONDENT PRO SE
Everett E. Powell II
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Angie L. Ordway, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED

Jun 14 2017, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 49S00-1504-DI-231

IN THE MATTER OF:

EVERETT E. POWELL II,

*Respondent.*

Attorney Discipline Action
Hearing Officer Robert W. York

**June 14, 2017**

**Per Curiam.**

We find that Respondent, Everett Powell, committed attorney misconduct by falsifying evidence and knowingly making false statements to this Court and the Commission in an attempt to be reinstated to the practice of law. For this misconduct, we conclude that Respondent should be disbarred.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties. Respondent's 2004 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

## Procedural Background and Facts

Assisted by another attorney, T.G. obtained a settlement of a personal injury action. Because T.G. was in an abusive relationship and had a history of drug and alcohol abuse, that attorney, with T.G.'s consent, established a special needs trust in 2004 to hold the settlement proceeds and prevent rapid depletion by T.G. and others who may not be acting in her best interests. Later in 2004, T.G., accompanied by her abusive partner, consulted Respondent about getting access to the trust funds. Respondent agreed to take the case for a fee of one-third of the trust corpus. After expending only minimal work, Respondent became successor trustee and quickly disbursed from the trust about $30,000 to T.G. and about $15,000 to himself. For his conduct in collecting an unreasonable fee, we suspended Respondent from the practice of law for at least 120 days without automatic reinstatement, effective November 11, 2011. Matter of Powell, 953 N.E.2d 1060 (Ind. 2011). Meanwhile, T.G.'s share was quickly dissipated on drugs and expenditures to T.G.'s partner and his family, an outcome the special needs trust had been designed to avoid.

Thereafter Respondent sought and was denied reinstatement. Those proceedings included findings by a hearing officer[1] that Respondent had, among other things, continued to practice law during his suspension, failed to appropriately maintain his trust account, forged the signatures of clients and another attorney, filed a false affidavit with this Court, and misappropriated $5,000 from another client. The hearing officer also found that Respondent had made no effort to make restitution to T.G. despite the financial ability to do so.

Only three days after we issued our order denying reinstatement, Respondent filed a second petition for reinstatement. Those proceedings included findings by the hearing officer that Respondent "has continued to engage in dishonesty, including filing two subsequent false or misleading affidavits with the Supreme Court, noticing a deposition without a court reporter in order to circumvent the hearing officer's mandate, filing bankruptcy, failure to pay debts, yet retaining the use of the property for which the debt was owed, filing meritless pleadings,

---

[1] The hearing officer who heard Respondent's reinstatement proceedings is not the same hearing officer who heard the instant disciplinary matter.

engaging in verbally aggressive attitude and behavior to advance his position, [and] being evasive and lacking candor when questioned during the hearing." Comm'n Ex. 4 at 41. The hearing officer also found that Respondent still had made no efforts toward restitution to T.G. other than "last minute, token efforts, calculated to further his goal" of being reinstated. Id. at 32. We denied Respondent's second reinstatement petition by order issued on March 6, 2014. In that order we identified several concerns we had regarding Respondent's conduct during the reinstatement process, one of which was that Respondent "has only belatedly attempted to make even nominal restitution to T.G." Comm'n Ex. 5 at 2. Respondent then filed a "Request for Clarification," which we denied on July 11, 2014.

The events that ensued form the basis for the Commission's verified complaint in this matter. On July 21, 2014, Respondent drove to Iowa to meet with T.G. at her workplace. Respondent told T.G. he needed her to sign a document stating that he had given her $15,000, but informed T.G. that he had only $1,500 to give her. T.G. agreed to sign the document, and Respondent assisted T.G. in executing, before a notary public, a document he had prepared falsely stating that T.G. had received $15,000. Respondent then gave T.G. $1,500. Respondent told T.G. she would not get in trouble for signing the document, but that if anyone from Indiana called her she should not say anything.

T.G. soon talked with friends and acquaintances, realized she had been taken advantage of, and contacted the Commission. Meanwhile, on August 26, 2014, Respondent (acting *pro se*) filed a third petition for reinstatement. Simultaneously, Respondent sent a letter and updated discovery to the Commission, falsely asserting in both that he had made full restitution of $15,000 and submitting the false document to this effect that he had induced T.G. to sign.

On September 3, 2014, the Commission served its Notice of Trial Deposition of T.G. as an out-of-state witness, scheduled for September 20, 2014. About a week prior to that deposition, Respondent twice called T.G., attempting to determine what she had told the Commission. T.G. did not answer his question. On September 15, 2014, Respondent (through his newly-retained counsel) filed a motion to withdraw his third reinstatement petition, in which he once again falsely represented that he had paid T.G. the full $15,000 restitution. The

Commission nonetheless proceeded to take the trial deposition of T.G. in order to secure her testimony. Respondent's counsel indicated he did not object to the deposition and elected not to attend.

The Commission charged Respondent with violating Indiana Professional Conduct Rules 3.3(a)(1), 3.4(b), and 8.4(c). At the final hearing in this matter, T.G.'s videotaped deposition was admitted over Respondent's objection. Respondent made an unsworn opening statement challenging T.G.'s credibility and claiming to have given her $15,000 in cash, but he expressly declined to testify. The hearing officer filed his report to this Court on December 1, 2016, concluding that Respondent violated the rules as charged and recommending that Respondent be disbarred.

**Discussion**

Notwithstanding Respondent's failure to comply with the deadlines set forth in Indiana Admission and Discipline Rule 23(15), we granted his belated request for belated briefing, and that briefing is now complete.

We review *de novo* all matters presented to the Court, including review not only of the hearing officer's report but also of the entire record tendered in the case. Matter of Thomas, 30 N.E.3d 704, 708 (Ind. 2015). The hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court reserves the right to make the ultimate determination. Id.

In his belated briefing to this Court, Respondent first argues that he did not violate Rule 3.3(a)(1), which in relevant part proscribes making a false statement of fact to a tribunal or failing to correct a false statement of material fact previously made, because the false statement contained in a pleading filed with this Court is attributable to Respondent's counsel, and not to Respondent himself. This argument is wholly unpersuasive under the circumstances. The predicate fact contained within the pleading filed by counsel was supplied by Respondent, *pro se* and under oath, in discovery provided to the Commission. Moreover, even were we somehow to

accept Respondent's unsupported proposition that the falsehood was attributable to counsel, Rule 3.3(a)(1) also imposes a duty on attorneys to correct any false statement of material fact previously made, something Respondent has never done. Indeed, Respondent's position throughout these proceedings has been that the representations he paid T.G. $15,000 were not false.

Respondent next argues that he did not violate Rule 3.4(b), which in relevant part prohibits an attorney from falsifying evidence. Respondent contends that falsifying a receipt is not necessarily the same thing as falsifying evidence. *See* Br. in Support of Pet. for Review at 7 ("[A] lawyer who falsifies a billing statement . . . is not in violation of Prof. Cond. R. 3.4(b) unless the document was created during a legal proceeding for the purpose of misleading the opposing party or counsel"). However, the act of falsifying a document need not occur contemporaneously with its tender as evidence, or even contemporaneously with the legal proceeding in which it eventually is tendered, in order for a violation of Rule 3.4(b) to occur. Here, Respondent created the false receipt shortly before initiating his third reinstatement proceedings, with the intent to use it as evidence, and Respondent later proffered the receipt as evidence and falsely averred it to be accurate during those proceedings. This conduct falls squarely within the ambit of Rule 3.4(b).

Third, Respondent argues he did not violate Rule 8.4(c), which prohibits engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. However, the entirety of Respondent's argument consists of an attack on T.G.'s credibility and the other evidence introduced by the Commission, including records showing Respondent made ATM withdrawals totaling $1,600 before driving to Iowa and that T.G. deposited $2,000 after meeting with Respondent.[2] The hearing officer expressly adjudged this evidence credible, and Respondent expressly declined to testify or offer any evidence on his behalf. We find in our *de novo* review ample support for the hearing officer's findings in this regard.

---

[2] T.G. explained this deposit included the $1,500 Respondent had given her plus $500 recently paid to her by her employer.

Finally, Respondent argues the hearing officer erred in admitting T.G.'s videotaped deposition into evidence, citing his due process rights as well as our trial and evidence rules. The hearing officer addressed this issue at length, in both a pretrial order and in his final report, and we agree with his analysis. Respondent and his then-counsel were given notice of T.G.'s trial deposition and the opportunity to participate. Counsel indicated he had no objection to the deposition and expressed his intention not to participate. Moreover, the admission of the deposition in these proceedings was not precluded by either Trial Rule 32(A)(3) or Evidence Rule 804(b)(1); contrary to Respondent's arguments, both of these rules explicitly allow, under the particular circumstances present here, for a deposition taken in one action to be used as evidence in a subsequent action.

In sum, we find sufficient support for the hearing officer's findings and conclusions with respect to the admission of T.G.'s deposition and to each of the charged rule violations. Accordingly, we find Respondent violated Professional Conduct Rules 3.3(a)(1), 3.4(b), and 8.4(c).

When we first disciplined Respondent in 2011 for collecting an unreasonable fee from T.G., we cited Respondent's inexperience and lack of prior discipline as factors in mitigation. These factors derive much of their mitigating weight from the notion that in many instances an attorney will be chastened by discipline for a first offense, adequately remedy his or her professional shortcomings, and be unlikely to recidivate going forward. *See generally* Admission and Discipline Rule 23(18); *see also* American Bar Association's *Annotated Standards for Imposing Lawyer Sanctions* 9.32(a), 9.32(f).[3] Unfortunately, Respondent has chosen a different road. Respondent's reinstatement proceedings have brought to light numerous additional uncharged instances of misconduct committed in the wake of our prior suspension order, including forged signatures and false affidavits, and Respondent's conduct throughout his reinstatement proceedings has been marked by extraordinary degrees of evasiveness and dishonesty. The grounds for the instant charges – Respondent's elaborate scheme to convince

---

[3] We hasten to add though that in some circumstances, such as those involving dishonesty or misappropriation, inexperience generally will not be a mitigating factor because "[l]ittle experience in the practice of law is necessary to appreciate such actual wrongdoing." In re Cleland, 2 P.3d 700, 705 (Colo. 2000).

the Commission and this Court that he had made full restitution to T.G. when in fact he had not –
are but the culmination of a years-long endeavor to game the system.  That endeavor ends today.

## Conclusion

The Court concludes that Respondent, a suspended attorney, violated the Indiana Rules of
Professional Conduct by falsifying evidence and knowingly making false statements to this
Court and the Commission in an attempt to be reinstated to the practice of law.

For Respondent's professional misconduct, the Court disbars Respondent from the
practice of law in this state effective immediately.  Respondent shall fulfill all the duties of a
disbarred attorney under Admission and Discipline Rule 23(26).  The costs of this proceeding are
assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.